# In the United States District Court
# for the
# Western District of Texas

| | |
|---|---|
| VERNON HARRIS § | |
| § | |
| v. § | SA-09-CV-523 |
| § | |
| BEXAR COUNTY, TEXAS § | |

## ORDER

On this day came on to be considered Defendant's motion to dismiss, or in the alternative, motion for summary judgment (docket no. 22).

## BACKGROUND

Vernon Harris is an African-American male and a former employee at the Bexar County Sheriff's Detention Center. On September 22, 2006, he was cited and given a three-day suspension by then-Sheriff Ralph Lopez for driving the wrong direction in an alley behind the Detention Center. He complained that a Hispanic officer committed the same offense, but was only given a warning. After he complained, he alleges that he was subjected to further discrimination. These allegations are the subject of litigation filed by the Plaintiff in SA-08-CV-728-XR.

In December 2006 Plaintiff suffered from various illnesses that resulted

in his missing work and taking FMLA leave.[1]

On or about June 21, 2008, Plaintiff alleges he suffered a work related injury when he was attacked by an inmate, causing him to be absent from work for a period of time.[2] The Sheriff's Department placed him on FMLA leave effective June 21, 2008. He exhausted his FMLA leave on September 20, 2008. On November 10, 2008, he was sent a notice of proposed dismissal for excessive absences, and that notice was delivered to him on November 13, 2008.

On November 18, 2008, Plaintiff requested a *Loudermill*[3] hearing to challenge his proposed dismissal.

On November 21, 2008, Plaintiff filed a charge of discrimination with the EEOC alleging that the proposed dismissal was a retaliatory act relating to a previous Title VII charge of discrimination that he filed on or about February 20, 2007 and the related Title VII lawsuit (SA-08-CV-728-XR) initiated on September 2, 2008.

After the filing of Plaintiff's November 21, 2008 charge of discrimination, the *Loudermill* hearing was continued. After the EEOC concluded its investigation of that charge, Plaintiff's grievance was again taken into consideration and he was formally terminated from employment on April 17,

---

[1] Plaintiff alleges that he suffers from Meniere's disease, migraine headaches, episodic dizziness, head and ear pressure, tinnitus and ear pain.

[2] The Sheriff's Department appears to dispute this allegation and contends Plaintiff suffered a non-work related injury.

[3] *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 554 (1985).

2

2009.[4]

In his Amended Complaint, Plaintiff alleges that Bexar County violated (1) the anti-retaliatory provisions of Title VII; (2) 42 U.S.C. § 1983 by depriving him of his Fourteenth Amendment due process and equal protection rights and his rights under the FMLA; and (3) the FMLA by interfering with and denying his rights under the Act and discharging or otherwise discriminating against him because of his FMLA leave.

## Defendant's Motion and Analysis

### A.  EEOC charge and exhaustion

Defendant first argues that Plaintiff did not exhaust his administrative remedies before the EEOC because he did not file a charge of discrimination with the EEOC after he was formally discharged on April 17, 2009. Defendant argues that the Plaintiff's November 21, 2008 charge was ineffective because Plaintiff was still employed on that date and had not suffered any adverse personnel action.

Plaintiff responds that the Notice of Proposed Dismissal required that he "immediately surrender all Department issued property, such as your duty weapon (if applicable), badge, official identification, magnetic key card, and building key(s) to the serving authority." He was further "advised that until further notice, access to all areas of the Detention Center is strictly prohibited." Accordingly, Plaintiff argues that this notice rose to the level of an adverse

---

[4] A June 11, 2009 memorandum, however, indicates the effective date of dismissal was June 2, 2009.

3

personnel action. Alternatively, Plaintiff argues that the notice, opportunity for Defendant to respond, and exhaustion aspects of the EEOC process were met in this case.

Under certain circumstances a notice of proposed removal is only an intermediate step in the removal process and therefore does not constitute an adverse employment action. *See Gannon v. Potter*, 2006 WL 3422215 (N.D. Calif. Nov. 28, 2006). In *Gannon*, the Plaintiff remained employed and paid during the challenged termination process, the notice was subject to an appeal, and accordingly the notice was only an "intermediate step in the removal process."

In this case, however, although Plaintiff had a right to challenge the proposed removal, he was required to surrender his identification badge, all equipment, and was barred from "access to all areas of the Detention Center." At the time the removal notice was delivered, an employee of the Sheriff's office confiscated his uniforms, badge and identification card. Accordingly, even if Plaintiff was able to physically report to work, the notice effectively precluded him from doing so and he suffered an adverse employment action by the removal.[5] Secondly, the proposed notice placed Plaintiff in a precarious position vis a vis filing a charge of discrimination with the EEOC. A number of courts

---

[5] In addition, both the Plaintiff and Defendant are applying the wrong standard as to what constitutes an adverse employment action. An adverse employment action in the Title VII retaliation setting is one that "a reasonable employee would have found ... [to be] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). Accordingly, the fact that Plaintiff may have not lost pay or benefits is not the controlling factor.

hold that it is the date the adverse personnel action is communicated to the employee, not the date on which the action takes effect, that controls any limitations period. *See e.g., Cada v. Baxter Healthcare Corp.*, 920 F.2d 446 (7th Cir. 1990). Had Plaintiff not timely filed his charge after receiving the proposed notice, it is likely Defendant would have been arguing the Title VII claim was barred by limitations. Finally, the purpose of administrative exhaustion was accomplished in this case. The Defendant had an opportunity to respond to the EEOC charge. The EEOC issued a "no cause" determination letter on March 27, 2009. The Defendant cannot argue that it has been prejudiced by any failure of the Plaintiff to file a new charge of discrimination after the discharge became "formal" on April 17, 2009.

Defendant's motion for summary judgment on this ground is DENIED.

**B. 2006 and 2007 Allegations**

The Defendant seeks summary judgment as to any Title VII claims raised by Plaintiff that allegedly occurred in 2006 and 2007 as barred by limitations. As noted above, Plaintiff filed a charge of discrimination on November 21, 2008. In that charge, he complained that he was being retaliated against by being served with a notice of proposed dismissal and being required to surrender all of his work equipment. He did not raise any other allegations in that charge.

In Plaintiff's Amended Complaint, however, Plaintiff references events that took place in September 2006 and thereafter. Plaintiff's amended complaint and his Response to Defendant's motion are unclear whether that information was included by way of background or if Plaintiff was seeking relief under Title

5

VII for those alleged acts.

The Court concludes that limitations bars Plaintiff from seeking any relief in this case for acts occurring in 2006 and 2007. Those alleged acts could not have reasonable grown from the acts identified in Plaintiff's November 21, 2008 Charge.[6]

Defendant's motion for summary judgment on this ground is GRANTED.

**C.     Notice of Proposed Dismissal and Dismissal**

In Defendant's Reply Brief, Defendant argues that Plaintiff's Title VII retaliation claim should be dismissed because Plaintiff only raises conclusory allegations to support his claim. This ground was not clearly raised in the motion to dismiss, or in the alternative, motion for summary judgment.

To establish a prima facie case of retaliation, a Plaintiff must establish that: (1) he engaged in an activity protected by Title VII; (2) the employer took an adverse employment action against the plaintiff; and (3) a causal connection exists between the protected activity and the adverse employment action. *See Brown v. United Parcel Service, Inc.*, 2010 WL 5348552 (5th Cir. Dec. 28, 2010).[7]

---

[6] "The filing of a charge of discrimination with the EEOC is a condition precedent to the bringing of a civil action under Title VII." *Sanchez v. Standard Brands, Inc.*, 563 F.2d 439, 460 (5th Cir. 1970). A Title VII plaintiff must file a charge of discrimination with the EEOC no more than 300 days after learning of an adverse employment decision in Texas, a referral state. *Messer v. Meno*, 130 F.3d 130, 134 (5th Cir. 1997). The scope of a Title VII complaint is limited to the allegations contained in the EEOC charge and those that "can reasonably be expected to grow out of the charge of discrimination." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008).

[7] Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nonretaliatory reason for the challenged employment action. If the defendant succeeds in doing so, then the burden shifts back to the plaintiff to show that the defendant's reason is a pretext for retaliation. *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007).

It is uncontested that Plaintiff engaged in a protected activity. He filed a charge of discrimination on or about February 20, 2007 and the related Title VII lawsuit (SA-08-cv-728-XR) on September 2, 2008.

Defendant argues that it took no adverse employment action against the Plaintiff despite the confiscation of his badge, identification card and uniforms. Defendant argues that Plaintiff claimed he was medically incapable of returning to work and made no attempts to physically return to work. Accordingly, Defendant argues that Plaintiff suffered no loss of pay or benefits as a result of the proposed notice of dismissal and he retained his rights to contest the proposed notice.

In this argument, Defendant confuses the "adverse employment action" standard in a Title VII non-retaliation case with the standard in a Title VII retaliation case. An adverse employment action in the retaliation setting is one that "a reasonable employee would have found ... [to be] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Accordingly, the fact that Plaintiff may have not lost pay or benefits is not the controlling factor.

Defendant also argues that no causal connection exists between the protected activity and any adverse employment action. Specifically, Defendant argues that there is no evidence that former Sheriff Lopez or Captain Valdez was involved in either the decision to issue the proposed notice of dismissal or the actual formal dismissal. Defendant argues that the only reason Plaintiff was

7

issued the notice of proposed dismissal was because he exhausted all of his available leave.

Because Defendant did not raise the issue of no causal connection in its original motion (and only raised the issue in its reply brief), the Court will afford Plaintiff the opportunity to respond to this argument prior to ruling. It is ORDERED that Plaintiff respond to this issue no later than 14 days from the date this Order is filed. Failure to respond will result in the Court considering summary judgment without the benefit of a response by Plaintiff.

**D.     FMLA Claim**

With regard to the 2008 FMLA claim, Defendant argues that it provided Plaintiff all of the FMLA leave he was entitled to and that Plaintiff failed to return to work at the end of such leave. Accordingly Defendant argues that it did not violate the FMLA as a matter of law.

Alternatively, to the extent that Plaintiff is complaining of any FMLA violation that occurred in December 2006/early 2007, Defendant argues that any such claims are barred by the two-year limitations period.[8] This lawsuit was filed on June 29, 2009.

Again Plaintiff's amended complaint and his Response to Defendant's motion to dismiss are unclear. It appears that Plaintiff does not dispute that he was afforded FMLA leave in 2006, 2007 and 2008. Accordingly, Plaintiff does

---

[8] The FMLA provides that the general limitations period is two years, however, "in the case of such action brought for a willful violation," the period is three years. 29 U.S.C. § 2617(c). *Nero v. Industrial Molding Corp.*, 167 F.3d 921 (5th Cir. 1999).

8

not complain that he was improperly denied FMLA leave. Rather, he appears to argue that in 2006 and 2007 he requested FMLA leave, was retaliated against thereafter, and the retaliation culminated in the proposed discharge issued to him in 2008.

Accordingly, with regards to the Defendant's motion seeking summary judgment as to any improper denial of FMLA leave, summary judgment is GRANTED on that issue.

With regard to any FMLA retaliation claims, it appears Plaintiff is arguing that he was retaliated against because he exercised FMLA rights when Captain Valdez (1) issued him a counseling notice on December 21, 2006[9]; (2) required that Plaintiff re-certify his FMLA leave; and (3) at some unspecified time caused him to lose two days pay by somehow not quickly approving a medical return to work release.

To make a prima facie case for retaliation under the FMLA, a plaintiff must show that: (1) he was protected under the FMLA; (2) he suffered an adverse employment decision; and either (3a) that he was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because he took FMLA leave. *Wilson v. Noble Drilling Services, Inc.*, 2010 WL 5298018 (5th Cir. Dec. 23, 2010).

In his Response, Plaintiff does not address the limitations argument. Plaintiff does not present any evidence that any FMLA violation was willful,

---

[9] Plaintiff acknowledges that on December 19 and 20, 2006 he agreed to swap "relief days" with another guard, but that he was absent because of an excused FMLA illness.

9

which would allow for a three-year limitations period to apply. With regard to the first two allegations, those acts do not constitute adverse employment actions. To the extent Plaintiff argues that he was being retaliated against in 2008 by the issuance of the proposed removal notice, Plaintiff does not present any evidence that he was treated any differently from any other employees who exhausted their leave. Accordingly, Defendant's motion for summary judgment as to Plaintiff's FMLA retaliation claim is GRANTED.

### E.     Section 1983 Claim

With regard to the section 1983 claim, Defendant argues that to the extent any section 1983 claim is predicated on the FMLA claim, it did not violate any of Plaintiff's FMLA rights as a matter of law. Otherwise, Defendant argues that Bexar County has no policy or practice to deny employees their FMLA rights.

Plaintiff responds by conceding this claim and waiving his section 1983 claim. Accordingly, summary judgment on this issue is GRANTED.

### Conclusion

Defendant's motion is GRANTED in part and DENIED in part as stated above. Summary judgment is GRANTED in favor of the Defendant as to Plaintiff's FMLA and Section 1983 claims. With regard to the Title VII retaliation claim, Plaintiff is ORDERED to file a response no later than January 28, 2011 addressing the Defendant's argument that no causal connection exists between the protected activity and any adverse employment action. The scheduling order in this case is vacated.

It is so ORDERED.

SIGNED this 14th day of January, 2011.

_____

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE